UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
SASHA ROBINSON,                                          :
                                                         :
                                Plaintiff,               :
                                                         :         **MEMORANDUM & ORDER**
                -against-                                :         **23-cv-5444 (DLI)(TAM)**
                                                         :
UNITED STATES OF AMERICA,                                :
                                                         :
                                Defendant.               :
----------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

On July 18, 2023, Plaintiff Sasha Robinson ("Plaintiff") commenced this negligence action against the United States of America ("Defendant") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671, *et seq*. Complaint ("Compl."), Dkt. Entry No. 1. Plaintiff claims that she faced public backlash when Tawana Hilliard ("Hilliard"), a former Department of Justice ("DOJ") paralegal, leaked a videotaped interview showing her cooperating with authorities in a criminal investigation of Hilliard's son, a purported gang member. *Id.* at ¶¶ 1, 30–45. Plaintiff brings three claims arising out of Hilliard's conduct: (1) negligence; (2) negligent hiring, retention, training, and supervision; and (3) negligent infliction of emotional distress ("NIED"). *Id.* at ¶¶ 56–91. On October 23, 2023, Defendant moved to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b) for lack of subject matter jurisdiction and failure to state a claim. Def's. Mot. to Dismiss ("Def's. Mot."), Dkt. Entry No. 10. Plaintiff opposed the motion. Pl. Opp'n ("Opp'n"), Dkt. Entry No. 14. Defendant replied. Reply, Dkt. Entry No. 16. For the reasons set forth below, Defendant's motion is granted for lack of subject matter jurisdiction.

## BACKGROUND

Except as otherwise indicated, the following facts are as alleged in the Complaint. On May 11, 2018, state and federal authorities arrested Plaintiff, her boyfriend, and Hilliard's son, Tyquan

1

Hilliard, in connection with an investigation into a string of robberies in Brooklyn, New York. Compl. ¶¶ 26–27. Plaintiff provided a videotaped statement to the Bureau of Alcohol, Tobacco, and Firearms ("ATF") agent investigating the robberies (the "ATF Video"), and was not charged with any crime. *Id*. at ¶ 28. However, Tyquan, a member of New York's 5-9 Brims gang, later was prosecuted in state court for robbery. *Id*. at ¶¶ 1, 28–29; Declaration of Philip DePaul ("DePaul Decl.") Ex. B, Govt. Sentencing Letter ("Sentencing Letter") at 8, Dkt. Entry No. 9-2. At the time, Hilliard was a paralegal in the United States Attorney's Office for the District of New Jersey. Compl. ¶ 22.

Tyquan suspected that Plaintiff was cooperating with the government, and, at his request, Hilliard obtained the ATF Video and posted it on the internet. *Id*. at ¶¶ 30–36; Sentencing Letter at 9–10. On August 8, 2019, a federal grand jury indicted Hilliard in this district for crimes arising out of her release of the ATF Video. Compl. ¶¶ 46–48; *See also*, *United States v. Hilliard*, 19-cr-358(PKC), Dkt. Entry No. 1. Plaintiff alleges that "[t]he government's [] investigation of Hilliard would prove [that] she obtained the [ATF Video] from her employment at the DOJ" and "uploaded [it] with her Google Account to YouTube with an IP Address under an Optimum Account registered to Tawanna Hilliard in Brooklyn, New York." Compl. ¶ 36. However, the government's investigation actually found that Hilliard had obtained the ATF Video from James Koenig ("Koenig"), Tyquan's criminal defense attorney in the state prosecution, not through her employment with DOJ. *See*, Def's. Mot. at 11–15 (collecting trial evidence); Sentencing Letter at 9–10 (explaining that Koenig received the ATF Video in discovery and gave it to Hilliard); DePaul Decl. Ex. C, State Court Discovery Letter ("Discovery Letter") at 2, Dkt. Entry No. 9-3 (discovery letter, which was found in Hilliard's apartment, indicating that "Video Interviews of S. ROBINSON" were produced to Koenig); *See also*, *United States v. Hilliard*, 2024 WL 3634201,

2

at *1 (2d Cir. Aug. 2, 2024) ("At the request of her son, Hilliard obtained the recordings *from her son's lawyer* and coordinated with gang members to post the videos online." (emphasis added)).

After the release of the ATF Video, Plaintiff was branded a "snitch" and experienced public backlash. Compl. ¶¶ 37–41, 85. Plaintiff's address was shared on social media, gun shots were fired near her home, and, after she received a credible threat to her life, federal authorities placed her in witness protection for several months. *Id*. at ¶¶ 37–45. Consequently, Plaintiff suffered severe emotional distress with physical manifestations, including a miscarriage. *Id*. at ¶¶ 12–16, 38. On April 26, 2022, a jury convicted Hilliard of witness retaliation conspiracy, witness retaliation, obstruction of justice conspiracy, and obstruction of justice. *Id*. at ¶ 50; *United States v. Hilliard*, 19-cr-358(PKC), Verdict Form, Dkt. Entry No. 122.

Plaintiff argues that Defendant knew or should have known that Hilliard was a "mole for a violent gang" because she had misused DOJ resources in the past. Compl. ¶¶ 22–25, 72–81. As a DOJ paralegal, Hilliard had access to "data and information relating to pending cases and databases maintained by the DOJ." *Id.* at ¶ 22; *See also*, Sentencing Letter at 5–6 (Hilliard had access to "public records databases" and "government systems [used for] criminal history checks [that contain] information that is not publicly available"). In April 2016, Hilliard used DOJ resources to look up information on gang members and report back to Tyquan (the "2016 Searches"). Compl. ¶¶ 23–24; *See also*, Sentencing Letter at 4–5. Plaintiff claims that Defendant was on "notice and constructive notice of Hilliard's propensity to access and use unauthorized information and data," but does not explain how Hilliard's supervisors knew or could have known of the 2016 Searches. Compl. ¶ 77. [1] In any event, Plaintiff contends that Defendant is responsible for Hilliard's release of the ATF Video because it: (1) did not vet Hilliard adequately before hiring

---

[1] The original indictment of Hilliard included a charge arising out of the 2016 Searches, but the government voluntarily dismissed it later in the case. Compl. ¶¶ 46–49; Sentencing Letter at 5 n.2.

3

her; (2) failed to train her properly; (3) should have limited her access to DOJ resources; and (4) should have terminated or disciplined her after the 2016 Searches.  *Id.* at ¶¶ 72–75.

Defendant argues that this case should be dismissed because: (1) it has not waived sovereign immunity and, thus, the Court lacks subject matter jurisdiction because: (a) Hilliard was not acting within the scope of her employment when she obtained and leaked the ATF Video; (b) the claims for negligent hiring, retention, training, and supervision are barred by the discretionary function exception to the FTCA; and (2) Plaintiff has failed to state a claim on the merits.  Def's. Mot. at 9–20.

Plaintiff counters that Defendant's motion to dismiss should be denied because: (1) even if Hilliard acted outside the scope of employment, Plaintiff's negligent hiring, retention, training, and supervision claims should survive; (2) the discretionary function exception does not bar relief where, as here, the nature of Defendant's negligence was "unrelated to any plausible policy objectives"; and (3) Plaintiff has stated a claim for negligence on the merits.  Opp'n at 8–12.

## STANDARD OF REVIEW

### I.     Federal Rule of Civil Procedure 12(b)(1)

A court may dismiss a case for lack of subject matter jurisdiction if it "lack[s] the statutory or constitutional power to adjudicate [it]."  *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "If sovereign immunity is not waived, a court does not have subject matter jurisdiction over [a] FTCA claim."  *Mahmud v. United States*, 2018 WL 2766141, at *3 (E.D.N.Y. June 7, 2018) (citing *Millares Guiraldes de Tineo v. United States*, 137 F.3d 715, 719 (2d Cir. 1998)).

On a Rule 12(b)(1) motion, the court must accept as true the factual allegations contained in the complaint, but it will not draw argumentative inferences in favor of the plaintiff because

4

subject matter jurisdiction must be shown affirmatively. *See*, *Morrison v. Nat'l Australia Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008); *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992). Thus, the plaintiff must establish the existence of subject matter jurisdiction by a preponderance of the evidence. *Aurecchione*, 426 F.3d at 638. "[W]here, as here, the jurisdictional challenge is based on the FTCA, the government receives the benefit of any ambiguities [in the complaint]." *Loew v. U.S. Postal Serv.*, 2007 WL 2782768, at *4 (E.D.N.Y. Feb. 9, 2007) (citing *Moreno v. United States*, 965 F. Supp. 521, 524 (S.D.N.Y. 1997)). In resolving a motion to dismiss for lack of subject matter jurisdiction, the court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions. *See*, *Morrison*, 547 F.3d at 170; *Kitzen v. Hancock*, 2017 WL 4892173, at *2 (E.D.N.Y. Oct. 27, 2017) (the court "need not accept as true contested jurisdictional allegations[,] and may resolve disputed jurisdictional facts by reference to affidavits and other matters outside the pleadings" (citation omitted)).[2] Subject matter jurisdiction is a threshold issue and, thus, a district court must consider a challenge to subject matter jurisdiction before other grounds for dismissal. *Rich v. New York*, 2022 WL 992885, at *3 (S.D.N.Y. Mar. 31, 2022) (citing *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)).

## II.  Federal Tort Claims Act

In general, federal courts lack jurisdiction over suits brought against the United States government. *See*, *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981). "[T]he United States, as

---

[2] Defendant's motion attached documents relating to the government's investigation and prosecution of Hilliard, including evidence admitted at trial. *See*, DePaul Decl. Exs. A–F. The Court may consider such affidavits and exhibits on a motion to dismiss for lack of subject matter jurisdiction. *Land v. Dollar*, 330 U.S. 731, 735, n.4 (1947) ("[W]hen a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion . . . the court may inquire by affidavits or otherwise, into the facts as they exist."); *Kamen v. American Telephone and Telegraph Co.*, 791 F.2d 1006, 1010–11 (2d Cir.1986) (evidentiary material may be presented by affidavit or otherwise on challenge to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)). The Complaint also incorporates by reference the government's investigative findings regarding Hilliard obtaining and leaking the ATF Video. *See*, Compl. ¶ 36 (referencing findings of the government's investigation); *Lohan v. Perez*, 924 F. Supp.2d 447, 453 (E.D.N.Y. 2013).

5

sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (citation omitted). "A plaintiff bears the burden o[f] demonstrating that sovereign immunity has been waived." *Haber v. United States*, 823 F.3d 746, 751 (2d Cir. 2016) (citing *Makarova*, 201 F.3d at 113).

The FTCA "constitutes a limited waiver by the United States of its sovereign immunity and allows for a tort suit against the United States under specified circumstances." *Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007) (internal quotation marks and citation omitted). "Under the FTCA, a private citizen may sue for injuries caused by 'the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Id.* (quoting 28 U.S.C. § 1346(b)(1)).

## DISCUSSION

Plaintiff has failed to establish that her claims fall within the FTCA's limited waiver of sovereign immunity. Defendant is not vicariously liable for Hilliard's conduct because she was not acting within the scope of her employment when she obtained and leaked the ATF Video. Moreover, Plaintiff's negligent hiring, retention, training, and supervision claims are barred by the discretionary function exception to the FTCA. Thus, the Court lacks subject matter jurisdiction over this action, and it must be dismissed.

**I.     Scope of Employment**

Sovereign immunity bars Plaintiff's claims to the extent they are based on vicarious liability for Hilliard's conduct, as she was not acting within the scope of her employment when

6

she obtained and leaked the ATF Video. "The FTCA's 'scope of employment' requirement is interpreted 'in accordance with the *respondeat superior* law of the jurisdiction where the tort occurred.'" *Woo Hee Cho v. Oquendo*, 2017 WL 3316098, at *5 (E.D.N.Y. Aug. 2, 2017) (quoting *Hamm*, 483 F.3d at 138). The parties appear to agree that New York law governs the scope of employment analysis here because Hilliard uploaded the ATF Video in Brooklyn, New York. *See*, Compl. ¶ 17; Def's. Mot. at 11; Opp'n at 9.

Pursuant to New York law, an employee acts within the scope of employment when: "(1) the employer is, or could be, exercising some control, directly or indirectly, over the employee's activities, and (2) the employee is doing something in furtherance of the duties he owes to his employer." *Agyin v. Razmzan*, 986 F.3d 168, 184 (2d Cir. 2021). To determine whether an employee acted in furtherance of his or her duties to the employer, courts consider: "(1) the connection between the time, place and occasion for the act; (2) the history of the relationship between the employer and employee as spelled out in actual practice; (3) whether the act is one commonly done by such an employee; (4) the extent of departure from normal methods of performance; and (5) whether the specific act was one that the employer could reasonably have anticipated . . . [and was done] at least in part to benefit the employer." *Id.* at 185 (internal quotation marks omitted). Here, Plaintiff has failed to allege any plausible connection between Hilliard's conduct and her employment at DOJ.

At the outset, the Complaint does not include facts sufficient to establish that Hilliard used DOJ resources to obtain and leak the ATF Video. Plaintiff alleges, in conclusory fashion, that "[t]he government's later investigation of Hilliard would prove [that] she obtained the [ATF Video] from her employment at the DOJ." Compl. ¶ 36. However, the Court need not credit allegations lacking any factual basis or context such as this. *Amidax Trading Group v. S.W.I.F.T.*

7

*SCRL*, 671 F.3d 140, 146 (2d Cir. 2011) ("It is well established that we need not credit a complaint's conclusory statements without reference to its factual context." (internal quotation marks omitted)).  Furthermore, while Plaintiff points to the government's investigation of Hilliard to support her claims, she misstated its findings.  The investigation actually found that Hilliard obtained the ATF Video from *Tyquan's criminal defense attorney*, not through her employment at DOJ.  *See*, Def's. Mot. at 11–15 (collecting trial evidence); Sentencing Letter at 9–10 (explaining that Koenig received the ATF Video in discovery and gave it to Hilliard); Discovery Letter at 2 (discovery letter, which was found in Hilliard's apartment, indicating that "Video Interviews of S. ROBINSON" were produced to Koenig); *See also*, *Hilliard*, 2024 WL 3634201 at *1 ("Hilliard obtained the recordings *from her son's lawyer*" (emphasis added)).  Moreover, the Complaint does not allege that Hilliard uploaded the ATF Video at her office or used DOJ resources to do so.  Instead, Plaintiff alleges that Hilliard uploaded the ATF Video from her Google account at her home in Brooklyn, New York.  Compl. ¶ 36; *See also*, Sentencing Letter at 11 (explaining that Hilliard uploaded the ATF Video to a publicly accessible Google Drive account).

Even if the Court were to accept Plaintiff's conclusory allegation that Hilliard obtained and leaked the ATF Video using DOJ resources, Hilliard's conduct was not done "in furtherance of" her duties or DOJ's interests.  *Razmzan*, 986 F.3d at 185.  To the contrary, the Complaint cites DOJ rules that require its employees to "safeguard . . . sensitive Department information" and prohibit public disclosure of "any . . . information that may reasonably be expected to influence the outcome of a pending or future trial."  Compl. ¶ 66.  There is no plausible factual basis to conclude that DOJ *benefitted* from Hilliard violating its policies, misappropriating its evidence, and retaliating against one of its witnesses.  *See*, *Gottlieb v. Sullivan & Cromwell*, 203 A.D.2d 241, 242 (2nd Dept. 1994) (employees who stole confidential information from employer and sold

it for illegal stock trades committed "criminal acts" outside the scope of employment because they "in no way advanced the interests of the [employer]"); *C.D. of NYC, Inc. v. U.S. Postal Serv.*, 2004 WL 2072032, at *4 (S.D.N.Y. Sept. 16, 2004), *aff'd*, 157 F. App'x 428 (2d Cir. 2005) (dismissing FTCA case where USPS employees stole Plaintiff's merchandise because "[c]ourts in New York are agreed . . . that theft by an employee is not within the scope of the employment, and employers are not held liable for thefts by employees"). Moreover, "an employer is not subject to liability based upon torts committed for personal motives unrelated to the furtherance of the employer's business." *Capak v. Epps*, 2020 WL 3073210, at *9 (S.D.N.Y. June 10, 2020) (internal quotation marks and citation omitted). As Plaintiff admits, Hilliard was motivated by a desire to help her son, not DOJ. Compl. ¶ 30; *See also*, *Hilliard*, 2024 WL 3634201 at *2 ("Hilliard's defense . . . [was] that she wanted to expose the witnesses as cooperators to rebut a rumor that her son was cooperating, because her son was in danger for being thought a cooperator."). Accordingly, Hilliard acted outside the scope of her employment and, thus, sovereign immunity bars Plaintiff's negligence and NIED claims.

## II.   Discretionary Function Exception

The discretionary function exception bars Plaintiff's negligent hiring, retention, training, and supervision claims as well. The FTCA provides that Congress' authorization of tort suits against the United States "shall not apply to . . . [a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exception only applies when two conditions are met: "(1) the acts alleged to be negligent must be discretionary, in that they involve an element of judgment or choice and are not compelled by statute or regulation, and (2) the judgment or choice in question

9

must be grounded in considerations of public policy or susceptible to policy analysis." *USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia*, 681 F.3d 103, 111–12 (2d Cir. 2012) (quoting *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000)). "For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *United States v. Gaubert*, 499 U.S. 315, 324–25 (1991).

Courts in this circuit routinely have "held that training, hiring, and supervision decisions are discretionary." *Stoyanov v. United States of America*, 2018 WL 623207, at *5 (E.D.N.Y. Jan. 25, 2018), *report and recommendation adopted sub nom.*, 2018 WL 8061070 (E.D.N.Y. Feb. 9, 2018) (collecting cases). This Court previously explained why such decisions are "susceptible to policy analysis":

> "The hiring decisions of a public entity require consideration of numerous factors, including budgetary constraints, public perception, economic conditions, individual backgrounds, office diversity, experience and employer intuition. Similarly, supervision decisions involve a complex balancing of budgetary considerations, employee privacy rights, and the need to ensure public safety. The extent of training with which to provide employees requires consideration of fiscal constraints, public safety, the complexity of the task involved, the degree of harm a wayward employee might cause, and the extent to which employees have deviated from accepted norms in the past. Such decisions are surely among those involving the exercise of political, social, or economic judgment."

*Saint-Guillen v. United States*, 657 F. Supp.2d 376, 387 (E.D.N.Y. 2009) (emphasis added) (Irizarry, J.) (quoting *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997)).

However, "[i]t is not the case that . . . all claims for negligent hiring or supervision are barred by the discretionary function exception." *Riascos-Hurtado v. United States*, 2015 WL 3603965, at *6 (E.D.N.Y. June 5, 2015) (alteration in original, citation omitted). Courts have found that the exception does not protect an official's "lazy or careless failure to perform his or

10

her discretionary duties," as it does not "involve an element of judgment or choice" and is not "grounded in considerations of governmental policy." *Id.* (quoting *Coulthurst*, 214 F.3d at 109–10). For example, in *Coulthurst*, which involved injuries allegedly caused by malfunctioning gym equipment, the Second Circuit contrasted the hypothetical negligence of an official who determined how frequently to inspect machines, which would be a decision grounded in public policy, with the hypothetical negligence of an official assigned to inspect machines, who "may in laziness or haste have failed to do the inspection he claimed" or have been "distracted or inattentive" in performing the inspection. *See*, *Coulthurst*, 214 F.3d at 109. Thus, to evaluate whether conduct falls within the exception, the court "must assess the *nature* of the allegedly negligent actions, as [they] are described in the Complaint, to see whether those actions are subject to policy considerations." *Ying Jing Zeng v. United States*, 2016 WL 8711090, at *6 (E.D.N.Y. Sept. 30, 2016) (Irizarry, J.), *aff'd*, 696 F. App'x 42 (2d Cir. 2017) (emphasis in original).

Here, the Complaint alleges that Defendant: (1) failed to "properly vet[] or investigate[]" Hilliard before hiring her; (2) gave Hilliard access to "materials relating to criminal investigations and ATF operations"; and (3) failed to terminate or discipline Hilliard after she accessed unauthorized information in April 2016, even though it could have and should have learned that she did so. Compl. ¶¶ 63, 73–81; *See also*, Opp'n at 10–11. Defendant counters that: (1) Plaintiff has failed to allege that its hiring, retention, training, or supervision was negligent; and (2) in any event, the discretionary function exception bars such claims. Def's. Mot. at 16–18. Plaintiff maintains that the discretionary function exception does not bar her claims because Defendant was "inattentive[], laz[y], [and] absentminded[]" by failing to "pay[] attention" to Hilliard's prior misuse of DOJ resources. Opp'n at 10–11.

11

As an initial matter, Plaintiff has "failed to meet [her] burden of pleading facts which would support a finding that [Defendant's] conduct . . . fell outside the scope of the exception." *Wang v. United States*, 61 Fed. Appx. 757, 759 (2d Cir. 2003) (citation omitted).  For the most part, Plaintiff relies on boilerplate and conclusory allegations that Defendant's supervision, hiring, and training was negligent.  Compl. ¶¶ 72–80; Opp'n at 11.  For example, Plaintiff alleges, in conclusory fashion, that Defendant "negligently allowed . . . Hilliard to remain a DOJ Paralegal even after she accessed unauthorized information in April 2016 and knew or should have known she would conduct the same conduct again." Compl. ¶ 75.  However, the Complaint does not explain how Defendant could have learned of Hilliard's prior misconduct such that its failure to terminate or discipline her was negligent.  Indeed, "an employer who has no notice of suspicious activity and no reason for suspicion can assume that employees are performing their work with integrity." *C.D. of NYC, Inc.*, 2004 WL 2072032 at *5.  While Plaintiff cites a DOJ rule requiring employees to "report allegations of criminal wrongdoing or administrative misconduct by Department employees to the Office of the Inspector General," this rule does not set standards for *monitoring* employee conduct, but rather it imposes a duty to *report* misconduct if an employee learns of it.  Compl. ¶ 67.  "At best, plaintiff[] draw[s] the unreasonable conclusion that, because the alleged [crimes] took place over almost two years, the [DOJ] must have known [that they occurred]." *C.D. of NYC, Inc.*, 2004 WL 2072032 at *5.  These pleading deficiencies alone warrant dismissal.  *See*, *Wang*, 61 Fed. Appx. at 759.

Even if the Court construes the Complaint liberally, the discretionary function exception would bar relief.  For the first time in her opposition brief, Plaintiff specifies that Hilliard's supervisors could have discovered the 2016 Searches by "look[ing] at her search history, which is always tracked and not subject to erasure when using the computer systems." Opp'n at 11.

Plaintiff may not amend her complaint in an opposition brief, but even if she could, the exception would apply. *See*, *Crianza v. Holbrook Plastic Pipe Supply, Inc.*, 2024 WL 216696, at *3 (E.D.N.Y. Jan. 19, 2024); *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (holding a party may not amend its complaint by advancing a new theory of liability for the first time in its opposition to a motion to dismiss).

DOJ's decisions regarding whether and when it screens employees' search history involve the "budgetary . . . [and] employee privacy . . ." considerations that fall squarely within the discretionary function exception. *Saint-Guillen*, 657 F. Supp.2d at 387. Similarly, DOJ's vetting and choice of paralegals, as well as the level of access, training, and tools they are given once hired, are policy decisions covered by the discretionary function exception. *See*, *Stoyanov*, 2018 WL 623207 at *5 (USPS' "choice of its mail carriers" was "intertwined with [its] policy goal[s]" despite plaintiff's assertion that it "knew or should have known [that the employee] had violent propensities"). Plaintiff has not alleged, for example, that a particular DOJ supervisor failed to conduct search monitoring required by a DOJ rule, or reviewed Hilliard's search history without reasonable diligence. *See*, *Ying Jing Zeng*, 2016 WL 8711090 at *6 (exception barred claims that TSA agent "select[ed] Plaintiff's bag for inspection" and "repackaged [his] baggage" negligently, but did not bar claim that agent carelessly poured the contents of his bag onto the floor and damaged his property). Accordingly, the discretionary function exception bars Plaintiff's negligent hiring, retention, training, and supervision claims. To the extent that the other claims are based on DOJ employees' hiring, retention, training, and supervision of Hilliard, they are dismissed for the same reason.

Finally, Plaintiff further asserts for the first time in her opposition memorandum that, *in addition* to the ATF Video, Hilliard used DOJ resources to "obtain[] plaintiff's public and non-

13

public *personal information* for harmful purposes." Opp'n at 10 (emphasis added). Plaintiff may not present a new theory of liability in an opposition brief, and, in any event, this allegation lacks any factual basis. *Crianza*, 2024 WL 216696 at *3. Plaintiff does not explain: (1) what "personal information" Hilliard obtained; or (2) how Hilliard harmed her by obtaining such information. Moreover, Plaintiff appears to be referencing an incident from January 2017, over a year before the release of the ATF Video, in which Hilliard used DOJ resources to research an entirely different individual, not her. *See*, Reply at 9–10 & n.1 (collecting trial evidence); Sentencing Letter at 17–18. Accordingly, Plaintiff may not proceed on this theory of liability either.

The Court finds that Defendant has not waived sovereign immunity over this action. Accordingly, the Court lacks subject matter jurisdiction and need not address Defendant's motion to dismiss for failure to state a claim.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss for lack of subject matter jurisdiction is granted and this action is dismissed with prejudice.

SO ORDERED.

Dated: Brooklyn, New York
September 27, 2024

/s/
DORA L. IRIZARRY
United States District Judge